IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMEY MCKEE,

Plaintiff,

v.

A. JORDAN, *et al.*,

Defendants.

No. 4:25-CV-02196

(Chief Judge Brann)

## MEMORANDUM OPINION

### MARCH 19, 2026

Jamey McKee is a serial prisoner litigant who is well known to this Court. He recently filed the instant *pro se* civil rights lawsuit—his eighth such case— alleging constitutional violations by two officials at the State Correctional Institution, Mahanoy (SCI Mahanoy), in Frackville, Pennsylvania. His Section 1983[1] claims sound in due process and retaliation. The Court will dismiss in part McKee's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## I.    BACKGROUND

McKee alleges that in November 2024, while incarcerated at SCI Huntingdon, he filed several reports under the Prison Rape Elimination Act of

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

2003 (PREA)[2] against two SCI Huntingdon staff members.[3]  McKee admits that he

has filed "numerous" PREA reports while incarcerated and cannot remember the

dates of the alleged incidents or the names of the SCI Huntingdon staff members

he targeted in the at-issue reports.[4]  In December 2024, McKee was transferred

from SCI Huntingdon to SCI Mahanoy.[5]

McKee recounts that on July 21, 2025, another inmate, Richard Brown, Jr.,

"sucker punched" him "without any justification or provocation," and a physical

altercation ensued.[6]  McKee contends that he restrained Brown by holding his arms

to the side of his body and pinning him to the chair, and that he "gently grabbed

Brown's chin . . . and redirected his face" to prevent Brown from spitting on him.[7]

After approximately 20 seconds, Brown "stopped his assault" and McKee released

him without any staff involvement.[8]

McKee alleges that Counselor G. Matthews—who had witnessed the

altercation—issued a misconduct report (number F317434), which charged McKee

with fighting and alleged that McKee had attempted to "strangle" Brown during

the incident.[9]  McKee claims that he "immediately beg[a]n to experience suicidal

---

[2]    34 U.S.C. § 30301 *et seq.*
[3]    Doc. 1 ¶ 12.
[4]    *Id.* ¶¶ 11, 13.
[5]    *Id.* ¶ 13.
[6]    *Id.* ¶¶ 32-36.
[7]    *Id.* ¶¶ 33-34.
[8]    *Id.* ¶ 36.
[9]    *Id.* ¶¶ 41, 46; Doc. 1-1 at 2.

ideation" from being "falsely accused" because he had a parole hearing in the next two weeks and was worried about the detrimental effect the misconduct could have on his chances for parole.[10] He contends that Matthews "fabricated" the misconduct because, during the incident, "neither of [his] hands . . . made contact with Brown's neck at any time."[11]

On July 25, 2025, a hearing was held on misconduct F317434 before Hearing Examiner A. Jordan.[12] During this hearing, McKee testified to his version of events from the altercation with Brown.[13] He denied strangling Brown and requested that Jordan review the video of the incident and dismiss the "fabricated" charge.[14] According to McKee, Jordan told McKee that he had reviewed the video footage and stated that "it clearly shows that you never strangled Brown or made any contact with his neck" or "harmed Brown at any time."[15] McKee further claims that Jordan stated that Matthews had informed Jordan that "she fabricated the misconduct report in retaliation to you [sic] filing [PREA] reports against D.O.C. staff and a lawsuit against Deputy Sokaloski."[16]

McKee alleges that Jordan continued, "Even though you're clearly innocent of the fighting charge, I'm finding you guilty solely based on the PREA reports

---

[10]  Doc. 1 ¶ 42.
[11]  *Id.* ¶ 47.
[12]  *Id.* ¶ 50.
[13]  *Id.* ¶¶ 51-54.
[14]  *Id.* ¶¶ 56-57.
[15]  *Id.* ¶ 58.
[16]  *Id.*

you filed against D.O.C. staff and the lawsuit you filed against Deputy Sokaloski! I think you have been lying on staff and this verdict should give you no chance for parole! I advise you to stop filing PREA reports and lawsuits because they will get you nothing but trouble!"[17]

These alleged statements are contradicted by the Disciplinary Hearing Report, which McKee attached to the complaint. In that document, Jordan indicates that after reviewing the misconduct report, 9 photographs, the video footage, form "DC-457," and McKee's statements, he believed Matthews' misconduct report over McKee's version of events and found that a preponderance of the evidence supported the charged offense of fighting.[18] McKee was sanctioned to 30 days' disciplinary segregation and loss of his prison job.[19]

McKee alleges that both Matthews and Jordan violated his First Amendment rights by retaliating against him for filing PREA reports and a lawsuit.[20] He additionally alleges that Jordan violated his substantive due process rights by finding him guilty of the charged misconduct in retaliation for the First Amendment conduct and because Jordan purportedly knew the allegations were false.[21] As best as the Court can tell, he seeks a declaration that his constitutional

---

[17]  *Id.* ¶ 59.
[18]  *See* Doc. 1-3 at 2.
[19]  *Id.*; Doc. 1 ¶ 61.
[20]  Doc. 1 ¶¶ 80-81, 84-87.
[21]  *Id.* ¶¶ 88-91.

rights were violated, injunctive relief (in the form of, *inter alia*, expungement of the allegedly fabricated misconduct), compensatory damages, punitive damages, and costs.[22]

## II.   STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[23]  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[24]  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[25]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[26]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the

---

[22]   *Id.* ¶¶ 90-95.  McKee's requested relief is difficult to read because he provided only a copy of his complaint and that copy cuts off portions of paragraphs 92, 93, and 94 of his complaint.

[23]   *See* 28 U.S.C. § 1915A(a).

[24]   *Id.* § 1915A(b)(1).

[25]   *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

[26]   *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver,* 82 F.3d 63, 66 (3d Cir. 1996).

light most favorable to the plaintiff.[27]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[28]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[29]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[30]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[31]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[32]  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[33]

Because McKee proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent

---

[27]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[28]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[29]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[30]  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[31]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[32]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[33]  *Iqbal*, 556 U.S. at 681.

standards than formal pleadings drafted by lawyers[.]"[34]  This is particularly true when the *pro se* litigant, like McKee, is incarcerated.[35]

## III.  DISCUSSION

Upon review of McKee's complaint, several of his Section 1983 claims must be dismissed under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  The Court will address his pleading deficiencies in turn.

### A.  Substantive Due Process Claim

McKee alleges that Jordan violated his Fourteenth Amendment substantive due process rights by subjecting him to an "offensive, brutal, arbitrary, and capricious misconduct hearing" and by finding him guilty in retaliation for his protected First Amendment conduct.[36]  The Due Process Clause of the Fourteenth Amendment to the United States Constitution contains both procedural and substantive protections.[37]  The substantive component of the Due Process Clause safeguards against certain deprivations of individuals' "life, liberty, and property" by state actors "regardless of the fairness of the procedures used to implement them."[38]  In a substantive due process challenge to governmental conduct, "the threshold question is whether the behavior of the governmental officer is so

---

[34]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[35]  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[36]  Doc. 1 ¶¶ 88-89.
[37]  *See generally* U.S. Const. amend. XIV, § 1.
[38]  *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).

egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[39]

A substantive due process claim, however, cannot be maintained when the alleged constitutional violation is "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment."[40]  In such situations, the claim must be analyzed under the rubric of the more specific constitutional provision rather than substantive due process,[41] an "unchartered area" with "scarce and open-ended" guideposts.[42]  The "more-specific-provision rule" will often apply when the challenged conduct underlying the substantive due process claim is the same conduct that implicates a more explicit constitutional provision.

McKee's substantive due process claim against Jordan is barred by the more-specific-provision rule.  McKee is simply repackaging his First Amendment retaliation claim as an alleged substantive due process violation, which he cannot do.  This repackaging is exemplified by the fact that McKee's due process allegations are largely carbon copies of his retaliation allegations.  Accordingly, the substantive due process claim against Jordan will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b)(1).

---

[39]  *Benn v. Univ. Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

[40]  *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

[41]  *Id.*

[42]  *Collins*, 503 U.S. at 125.

## B.    Official Capacity Claims

McKee sues both Defendants in their individual and official capacities.[43] However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[44]  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[45]  States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[46]  There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[47]

McKee seeks compensatory damages, punitive damages, and costs.  To the extent these monetary damages are sought against Defendants in their official

---

[43]  *See* Doc. 1 ¶ 9.

[44]  U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

[45]  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

[46]  *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

[47]  *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

9

capacities, such claims are barred by Eleventh Amendment sovereign immunity. McKee also requests that the at-issue misconduct be expunged. This type of prospective injunctive relief can be pursued through an official capacity claim against an appropriate defendant. Accordingly, the official capacity claim against Jordan seeking prospective injunctive relief may proceed.

### C.     Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[48]  Here, leave to amend will be denied as futile, as McKee's substantive due process claim is barred by the more-specific-provision rule. This case will proceed on the following claims: (1) individual capacity First Amendment retaliation against Jordan and Matthews; and (2) official capacity retaliation against Jordan for prospective injunctive relief only.

## IV.   CONCLUSION

Based on the foregoing, the Court will dismiss in part McKee's Section 1983 complaint pursuant to 28 U.S.C. § 1915A(b)(1).  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[48]   *Grayson*, 293 F.3d at 114.

10